SOUTHWIRE COMPANY v. LONG MANUFACTURING COMPANY
AND TOMMY RAY EUBANKS
— AND —
CHARLES RAY POPE v. LONG MANUFACTURING COMPANY
AND TOMMY RAY EUBANKS

No. 7118SC599

(Filed 15 September 1971)

1. **Pleadings § 32; Rules of Civil Procedure § 15— amendment of answer**
    The trial court did not err in allowing defendants to amend their answer to elaborate further on their defense of contributory negligence which had been pleaded in the original answer. G.S. 1A-1, Rule 15(a).

2. **Trial § 10— court's questioning of plaintiffs' witnesses — expression of opinion**
    In this action arising out of a collision between two tractor-trailers, the trial judge went beyond the clarification stage in his questioning of plaintiffs' witnesses and committed prejudicial error entitling plaintiffs to a new trial.

APPEAL by plaintiffs from *Armstrong, Judge,* 17 May 1971 Session of Superior Court held in Greensboro Division, GUILFORD County.

The two cases were consolidated for trial without objection. Plaintiffs seek to recover damages proximately caused by the actionable negligence of the defendants when a tractor-trailer unit owned by Long Manufacturing Company (Long) and operated by its employee, Tommy Ray Eubanks (Eubanks), collided with a tractor-trailer unit owned by Southwire Company (Southwire) and operated by its employee, Charles Ray Pope

(Pope). It was stipulated by the parties that Eubanks and Pope were the agents of their respective employers and were acting in the course and scope of their employment. Southwire seeks $6,764.60 for damages to its tractor and other alleged expenses, and Pope seeks $25,000.00 for personal injuries.

Both plaintiffs alleged in their complaints filed 1 February 1968 that Eubanks was negligent, in that (1) he violated the first two sections of the reckless driving statute, G.S. 20-140; (2) he drove faster than was reasonable and prudent and failed to reduce his speed as he approached an area of special hazard, in violation of G.S. 20-141(a) and (c); (3) he turned from a direct line without first seeing that such movement could be made in safety and without giving a signal of his intention to do so, in violation of G.S. 20-154; and (4) he failed to keep a proper lookout and maintain control of his vehicle.

The defendants filed an answer on 29 March 1968 in which they denied the material allegations of the complaint and alleged that the collision was caused solely by the negligence of Pope, in that (1) he violated the first two sections of the reckless driving statute, G.S. 20-140; (2) he drove faster than was reasonable and prudent, in violation of G.S. 20-141(a); (3) he followed the vehicle operated by Eubanks more closely than was reasonable and prudent, in violation of G.S. 20-152(a); and (4) he operated a motor truck and followed the vehicle operated by Eubanks within three hundred feet while traveling upon a highway outside a business or residence district, in violation of G.S. 20-152(b).

On 8 September 1970 Judge McConnell, upon motion of the plaintiffs, entered an order, the pertinent parts of which are as follows:

" * * * (F)or good cause shown, and pursuant to Rule 15(a) of the Rules of Civil Procedure, it is,

Ordered, that the answer heretofore filed by the defendant be and is hereby amended by adding a paragraph thereto, at the end of paragraph III of the Further Answer and Defense, in words and figures as follows:

IV. 'If the defendants, or either of them, were in any manner negligent in respect of the collision specified by the plaintiff, which is expressly denied, the negligence of the

plaintiff as set forth in paragraph III above, constituted contributory negligence on its part, and such contributory negligence is pleaded as a bar to any recovery by the plaintiff herein.' "

At the close of the plaintiffs' evidence, the court allowed defendants' motion for a directed verdict. Plaintiffs appealed.

*Sapp & Sapp by W. Samuel Shaffer II for plaintiff appellants.*

*J. B. Winecoff and Harry Rockwell for defendant appellees.*

MALLARD, Chief Judge.

[1] The first question presented by appellants is whether "the court committed error in granting the order allowing the defendants to amend their answer." In the original pleadings filed in this case, the defendants had alleged "that the negligence and recklessness of Charles R. Pope are specifically pleaded in bar of any recovery herein by the plaintiff." G.S. 1A-1, Rule 15(a), permits, among other things, a party to amend his pleading by leave of the court and provides that "leave shall be freely given when justice so requires." This rule also provides that a party shall plead in response to an amended pleading within thirty days unless the court orders otherwise. The amendment allowed was a further elaboration of what had already been pleaded. The plaintiffs apparently were aware of the amendment on the date it was allowed, 8 September 1970, because their exception to the order was "noted" as of that date. The case was not tried until the 17 May 1971 Session. Plaintiffs had ample time to respond, if they desired, to the amended pleading. It was not error to allow the motion to amend.

[2] The plaintiffs contend that "the court committed error in its continuous interrogation of plaintiffs' witnesses." Plaintiffs argue in their brief that the judge, in questioning their witnesses, went far beyond the clarification stage and usurped the right of the attorney to systematically question his witnesses in an orderly manner.

The plaintiffs took several exceptions to the questioning of plaintiffs' witnesses by the trial judge throughout the presentation of their evidence. The following, which occurred

during the direct examination of the individual plaintiff, is illustrative of the interrogation assigned as error:

"A. As I came into the junction of I-85 and I-40, I proceeded around into this intersection here.

Q. Mr. Pope, could you please speak up. The jury can't hear you.

A. I proceeded into this intersection of I-40 and I-85.

Q. In what lane?

A. Lane 4. As I came around there, this red tractor and trailer came around me.

COURT: Who came around you?

WITNESS: A red tractor and trailer. I believe it was driven by Eubanks.

COURT: Eubanks came around you where?

WITNESS: In the curve at the junction of I-85 and I-40.

COURT: Came around you in what lane?

WITNESS: He was in lane 3. We proceeded into this junction of I-40 and I-85 and along this—between the junction and the bridge here, there came an opening.

COURT: Which bridge?

WITNESS: I believe it is 220 overpass.

COURT: The first one there?

WITNESS: Yes, sir.

COURT: What happened then?

WITNESS: I changed over into lane 3.

COURT: That is the lane that you say Eubanks was in, was it?

WITNESS: Yes sir, he was in lane 3.

COURT: Ahead of you or behind you?

WITNESS: Pardon?

COURT: Ahead of you or behind you?

WITNESS: Ahead of me. As we came under the junction of 220—

COURT: Wait a minute—go ahead, I thought you had already gotten by that.

WITNESS: No sir, I had just gotten to it. As we came under the junction of 220, Eubanks changed into lane 4. As we proceeded through U. S. 220 to the Elm Street cut-off, Eubanks continued down in lane 4 and myself in lane 3.

COURT: You were in 4 and Eubanks was in 3?

WITNESS: No sir, I was in 3 and Eubanks was in 4.

COURT: Eubanks was in 4?

WITNESS: Yes. As we came to this Elm Street bridge, you could see on either side of the Interstate Highway there that they had those barricades set up there. Traffic began to pile up, what you might say—

COURT: You could see the barricades where?

WITNESS: On the right and left side of the road.

COURT: All right, go ahead.

WITNESS: They also had two flagmen there, one on each side of the road. As we went under this bridge here, all at once Eubanks made a direct left turn into lane 3.

COURT: As he went under the Elm Street bridge?

WITNESS: Yes.

COURT: All right.

WITNESS: And he stopped abruptly. I didn't and that's the last thing I remember.

COURT: So you ran into him then, is that what you say?

WITNESS: I couldn't stop. There wasn't any way I could stop.

COURT: That isn't what I asked you, you had the collision?

WITNESS: Yes, sir.

COURT: Were you knocked unconscious or something?

WITNESS: I don't remember.

COURT: So that's all you remember, when you say he turned in front of you?

WITNESS: He made a left swerve into lane 3, and I tried to avoid hitting him and the rear of his truck.

MR. SHAFFER:

Q. Do you remember approximately what speed you were traveling at the time?

A. It was below the speed limit. I don't remember the exact speed.

COURT: If you know, what speed were you going?

WITNESS: Approximately 30 miles an hour.

MR. SHAFFER: I'm talking about the vicinity of the Elm Street bridge overpass.

COURT: You say you were going approximately 30 miles an hour—when?

MR. SHAFFER:

Q. At what time were you going approximately 30 miles an hour, for what period?

A. I would say between the 220 cutoff and Elm Street, because they had signs out there, 'men working ahead.'

COURT: You are mumbling. I can't hear you. You are not talking loud enough.

WITNESS: They had signs on the right side of the road, I believe, 'men working' and the way the traffic was to go and all.

COURT: I just asked you what speed you were going, if you knew, and when it was you are talking about that you were going 30 miles an hour?

WITNESS: Between 220 and—

COURT: Between the two bridges?

WITNESS: Yes sir.

COURT: Did you continue that speed until the collision, or what?

WITNESS: The traffic was still moving until he made that sudden turn into my lane and stopped all at once.

COURT: Were all the lanes blocked except 3?

WITNESS: No, sir, there was one lane open.

COURT: That would be 3, wouldn't it?

WITNESS: Yes, sir.

COURT: And when did you first see the lanes—at what point were you on the highway?

WITNESS: Approximately Elm Street bridge, just before you go under.

COURT: You say they were blocked there?

WITNESS: Yes, sir.

COURT: Before you went under, you say just as you went under?

WITNESS: Just as you went under the bridge, you could tell they were blocked on both sides.

MR. SHAFFER:

Q. I hand you plaintiffs' Exhibit 5 and plaintiffs' Exhibit 6. They have already been introduced into evidence, and I ask you to identify the truck that you were driving.

A. This is the truck I was driving.

Q. This is plaintiffs' Exhibit 6?

A. Yes.

COURT: You have already got those in. What is it that you want to ask him about it?

MR. SHAFFER: I wanted to ask him which way he was turning.

MR. SHAFFER:

Q. Just describe the location of your truck in regard to the lanes of traffic.

A. I don't understand what you mean by that.

Q. Just describe where your truck is in regard to—

COURT: The jury can see that from the picture.

MR. SHAFFER: I will hand them to the jury then."

We hold that the able and experienced trial judge, in his questioning of the witnesses, went beyond the clarification stage and committed prejudicial error entitling plaintiffs to a new trial.

New trial.

Judges CAMPBELL and HEDRICK concur.